IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BELINDA ANDERSON, *individually and on behalf of all others similarly situated*,

  Plaintiff,

  v.

ANGIE'S LIST, INC.,

  Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-4344-TWT

**OPINION AND ORDER**

This is a putative class action case under the Telephone Consumer Protection Act ("TCPA"). It is before the Court on the Defendant's Motion to Compel Arbitration [Doc. 7]. For the reasons set forth below, the Defendant's Motion to Compel Arbitration [Doc. 7] is GRANTED.

  I.   Background

This case arises from the Plaintiff Belinda Anderson's alleged use of the Defendant Angie's List, Inc. ("Angi")'s website to request work from a home services provider.[1] (Compl. ¶¶ 1, 3). Anderson alleges that after requesting the service, the Defendant "bombarded" her with telemarketing text messages and continued to do so even after she requested that it stop. (*Id.* ¶¶ 10–12). She claims that "[a]t no point in time did [she] provide [Angi] with her express

---

    [1] Angie's List, Inc. changed its name to Angi in March 2021. (Br. in Supp. of Def.'s Mot. to Compel Arb., at 1, n.1).

written consent to be contacted," and that to the extent she did provide such consent, she expressly revoked it when she responded "Stop" to Angi's text messages. (*Id.* ¶¶ 20–21). The Defendant contends that the Plaintiff agreed to arbitrate the present dispute because she assented to Angi's Terms & Conditions prior to making her service request by clicking on a "View Matching Pros" button on Angi's website. (Br. in Supp. of Def.'s Mot. to Compel Arb., at 2–3; *see also* Doc. 7-1, at 8). The Terms & Conditions contained a clause requiring arbitration of all disputes through final and binding arbitration. (Doc. 7-1, at 22–23). The Defendant now moves to compel arbitration.

## II.   Legal Standard

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). Section 2 of the Act provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement forecloses arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Courts apply state contract

law to questions regarding the validity, revocability, and enforceability of arbitration agreements. *See Caley*, 428 F.3d at 1368. An arbitration clause may be unenforceable for the same reasons as any other contract, such as fraud or unconscionability. *See Mitsubishi*, 473 U.S. at 627. Or there may be statutory barriers to arbitration, such as a congressional intention to adjudicate certain substantive rights solely in a judicial forum. *See id.* at 628. When an arbitration agreement clears both prongs of the FAA test, a court must either stay or dismiss the lawsuit and compel arbitration. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

### III. Discussion

The Defendant moves to compel arbitration, arguing that the Plaintiff agreed to Angi's Terms and Conditions that included a class action waiver and an agreement to arbitrate her claims. (Br. in Supp. of Def.'s Mot. to Compel Arb., at 2). In response, the Plaintiff argues that the Defendant's purported notice of its Terms and Conditions was not viewable and that the Defendant fails to show that she unambiguously manifested assent to the Terms & Conditions. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Compel Arb., at 2–3). The crux of the issue here is whether the Plaintiff assented to the Defendant's Terms & Conditions; the parties do not appear to dispute that the Terms & Conditions mandate arbitration of the Plaintiff's claims.

The Eleventh Circuit has recognized "that issues concerning contract formation are generally reserved for the courts to decide." *Solymar Invs., Ltd.*

3

*v. Banco Santander S.A.*, 672 F.3d 981, 989 (11th Cir. 2012) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). Such determinations are "threshold question[s] in any dispute involving arbitration," and thus, a district court should "first resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* at 989–90 (quotation marks and citations omitted). The Plaintiff argues here that she never entered into an agreement with the Defendant to arbitrate disputes or to delegate issues of arbitrability to an arbitrator and thus that the Court should decide her asserted formation issues at the outset. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Compel Arb., at 9). Accordingly, the issue of arbitrability is properly decided by this Court, and the Court begins by addressing the issue of contract formation. *See Deverze v. Uber Techs., Inc.*, 2020 WL 10111001, at *4 (N.D. Ga. May 7, 2020).

"[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement."[2] *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

---

[2] Though a summary-judgment-like standard governs the present Motion to Compel Arbitration, the Court concludes that the Plaintiff need not have specifically responded to each of the Defendant's stated material facts or else have deemed them admitted, as the Local Rules require in motions for summary judgment. (Reply Br. in Supp. of Def.'s Mot. to Compel Arb., at 4).

Federal courts in Georgia apply state law principles to issues of contract formation. *Deverze,* at *5. "Under Georgia law, four elements are required in order to have a valid contract: (1) parties who are able to contract, (2) consideration, (3) assent by the parties to the terms of the contract, and (4) a subject matter for the contract to operate upon." *Id.* (citation omitted). The Plaintiff contests the third element here, claiming that she could not have assented to Angi's Terms & Conditions by merely clicking a button on the Defendant's website, especially when that button was above the purported notice of the Terms & Conditions. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Compel Arb., at 10–11).

> In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

*Thornton v. Uber Techs., Inc.*, 359 Ga. App. 790, 792 (2021). The Plaintiff relies primarily on *Thornton*, a recent decision from the Georgia Court of Appeals, in support of her position that a genuine dispute of material fact remains as to the issue of mutual assent. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Compel Arb., at 13).

In *Thornton*, the plaintiff brought a wrongful death action against Uber after an Uber driver murdered her son. *Thornton*, 359 Ga. App. at 790. At issue in the case was whether the plaintiff's son assented to an arbitration

5

agreement contained in Uber's terms and conditions when he registered for the Uber application on his smartphone, such that the plaintiff would be required to arbitrate her claims against Uber. *Id.* at 791. In that case, counsel for Uber conceded that when the plaintiff's son registered for the Uber App, the keyboard "may have momentarily covered" the text with the link to the terms and conditions. The court ultimately found that a genuine issue of material fact remained as to whether "the on-screen keyboard concealed the text so that the terms and conditions were either never displayed or displayed for an unreasonably short amount of time such that Thornton would not have seen them." *Id.* at 793–95.

Here, the Plaintiff claims that she never had the opportunity to see Angi's Terms & Conditions because, like in *Thornton*, her smartphone's keyboard concealed the Terms & Conditions that appeared below the "View Matching Pros" button. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Compel Arb., at 14). The Plaintiff submits two screenshots from her phone to illustrate her position. (Doc. 13-1, at 3). The two screenshots are undated, and the Plaintiff does not explain why or when they were taken. Both screenshots show that the keyboard could be closed. The Plaintiff does not explain why it was opened or how long it obscured the terms and conditions link.

The Defendant claims that the Plaintiff focuses on an entirely different visit (on June 26) to the Angi website from the visit (on July 28) that the Defendant claims requires arbitration. (Reply Br. in Supp. of Def.'s Mot. to

Compel Arb., at 1). Specifically, the Defendant argues that "what happened on [the June 26] visit is irrelevant because the July 28 visit pre-dates all text messages she complains about and that visit remains unchallenged." (*Id.*). The Gulati Declaration relied upon by the Defendant unequivocally states that it was on the July 28 visit that the Plaintiff clicked "View Matching Pros" and submitted her registration information including the 3713 telephone number referenced in the Complaint. In doing so she agreed to the Defendant's terms and conditions including the arbitration provision. That conclusion is consistent with an objective theory of mutual assent. The Plaintiff's claim that she did not assent to the terms and conditions because she took some action to obscure the link is not. The Plaintiff was given reasonable notice of the terms of her agreement with the Defendant. Whether or not she actually clicked on the link to the terms and conditions is irrelevant. *See Nardo v. HomeAdvisor, Inc.,* 2022 WL 17547940, at *5 (D. Colo. July 27, 2022), report and recommendation adopted, 2022 WL 17547938 (D. Colo. Aug. 11, 2022).

### IV.   Conclusion

For the foregoing reasons, the Defendant's Motion to Compel Arbitration [Doc. 7] is GRANTED. This action is STAYED pending submission to arbitration. The Clerk is directed to ADMINISTRATIVELY CLOSE this case.

SO ORDERED, this ___13th___ day of April, 2023.

7

*Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge